IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANDREW DEAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 09-515 |
| v. | ) | |
| | ) | |
| SPECIALIZED SECURITY RESPONSE, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

Pending before the court is a motion for a new trial (ECF No. 104) filed pursuant to Federal Rule of Civil Procedure 59(a). Andrew Dean ("Dean" or "plaintiff"), an African-American former security guard, commenced this action against his former employer, Specialized Security Response, Inc. ("Specialized" or "defendant"), by filing a complaint with this court on April 28, 2009. (ECF No. 1.) Plaintiff's complaint included the following claims: (1) race discrimination in violation of the Civil Rights Act, 42 U.S.C. § 1981; (2) retaliatory discharge in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); and (3) a violation of Pennsylvania's Criminal History Record Information Act, 18 PA. CONS. STAT. § 9101, *et seq.* ("RIA").

*Procedural and Factual Background*

On August 24, 2011, the court entered an order (ECF No. 47), with an accompanying memorandum opinion (ECF No. 46), granting in part and denying in part defendant's motion for summary judgment (ECF No. 30). The court granted the motion with respect to the § 1981

claim and the claim for a violation of the RIA. The court denied the motion with respect to the FLSA retaliatory discharge claim, which was set for trial.

On January 17, 2012, a jury was selected and the trial commenced on the FLSA claim. The trial concluded on January 19, 2012. On January 19, 2012, a jury verdict was returned in favor of defendant. (ECF No. 99.)

On February 13, 2012, Dean filed the pending motion for a new trial (ECF No. 104) and a brief in support of the motion (ECF No. 105). On March 5, 2012, defendant filed a response to the motion (ECF No. 108), as well as a brief in opposition (ECF No. 109).

Plaintiff's motion for a new trial asserts there were six errors made by this court and that he is entitled to a new trial. Specifically, he argues the court erred when it: (1) determined the applicable standard for causation in FLSA retaliation claims; (2) failed to instruct the jury on the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); (3) failed to instruct the jury that defendant was not licensed under Pennsylvania law as a private detective agency in 2008; (4) excluded the testimony of Darrell Parker; (5) allowed evidence of defendant's private detective license applications from 2009 and 2010; and (6) granted defendant's motion for summary judgment in part. (Pl.'s Mot. New Trial (ECF No. 104) at 1-2.)

The factual background relevant to this opinion was reviewed in the court's prior memorandum opinion resolving defendant's motion for summary judgment. See Dean v. Specialized Sec. Response, Civil Action No. 09-515, 2011 WL 3734238, at *1-5 (W.D. Pa. Aug. 24, 2011). Because plaintiff relied on no facts of record in his motions or supporting briefing, the court need not recite the entirety of the testimony presented at trial. Relevant portions of the trial record will be included in this opinion where necessary.

*Standard of Review*

Federal Rule of Civil Procedure 59(a) provides, in relevant part:

> (1) **Grounds for New Trial**. The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
>
>> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; . . . .

FED. R. CIV. P. 59(a)(1)(A).

Rule 59(a) does not set forth specific grounds on which a court may grant a new trial. "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992) (citing Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)); see Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187 (3d Cir. 1990) ("When the granting or denial of a new trial is contested on appeal, substantial deference must generally be given to the decision of the trial judge, who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." (internal quotation omitted)). The court may order a new trial if it is required to prevent injustice or to correct a verdict that was contrary to the weight of the evidence. Am. Bearing Co. v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir. 1984). Requests for a new trial are disfavored by the law. Price v. Trans Union, L.L.C., CIV.A. 09-1332, 2012 WL 898687, at *3 (E.D. Pa. Mar. 16, 2012) (citing Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991)). A trial court will not grant a new trial on the basis of trial error unless the error resulted in prejudice. Id. In other words, no injustice will be found in nonprejudicial trial errors.

The scope of the court's discretion in evaluating a motion for a new trial depends upon whether the motion is based upon a prejudicial error of law or a verdict alleged to be against the

weight of the evidence. See Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Because the court must be cautious not to usurp the proper role of the jury, the court has more limited discretion when the basis for the motion is that the verdict is against the weight of the evidence and ought only grant a new trial on that basis when the verdict, if left standing, would result in a miscarriage of justice. Id. at 1290. When the motion involves a matter within the discretion of the trial court—such as the court's evidentiary rulings, jury instructions, or the proper handling of a prejudicial statement made by counsel—the district court has wider latitude in ruling on the motion. Id.; Foster v. Nat'l Fuel Gas Co., 316 F.3d 424, 429-30 (3d Cir. 2003).

*Discussion*

The court will deny plaintiff's motion for a new trial because plaintiff's motion merely raises issues already decided by the court, and because Plaintiff has not presented any basis for the court to conclude that a new trial is required to prevent injustice. The court did not error in any of the rulings which Plaintiff challenges in his motion.

**A. Causation**

First, plaintiff argues the court should have applied a "proximate causation" standard as opposed to a "but-for" standard in instructing the jury on the elements of the claim. (Pl.'s Br. (ECF No. 105) at 3-4.) Plaintiff argues that the jury instructions were contrary to Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011). Courts have, however, consistently limited the holding in Staub to cases involving the so-called "cat's paw" theory of discrimination, wherein the plaintiff argues that "someone other than the person accused of discriminating against plaintiff made the termination decision."[1] Igwe v. Saint Anthony's Hosp., 804 F. Supp. 2d 1183, 1191 (W.D. Okla. 2011) ("Staub is distinguishable. There the Supreme Court considered the

---

[1] A typical example might involve a false report of an employee's bad behavior by an intermediate supervisor, based upon materially discriminatory intentions, which results in a higher level supervisor taking disciplinary action on the employee (without any discriminatory animus).

4

'cat's paw' theory, holding that 'if a [subordinate] supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable.'" (quoting Staub, 131 S. Ct. at 1194)); accord Caffaso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 n.14 (9th Cir. 2011) (noting that Staub applies to the "cat's paw" theory of discrimination); E.E.O.C. v. Decker Transp. Co., No. 09-13116, 2011 WL 1792763, at *5 (E.D. Mich. May 11, 2011) ("Staub is distinguishable from the present facts because it involves a case in which a plaintiff proffered evidence that non-terminating supervisors intentionally made a false accusation against him which ultimately led to his termination."); Allen v. Radio One of Tex. II, LLC, Civil Action No. H-09-4088, 2011 WL 1527972, at *5 (Apr. 20, 2011) ("The Supreme Court held [in Staub] that an employer—acting through an unbiased decision maker—could still be held liable for discrimination if an immediate supervisor performs an act motivated by proscribed discriminatory animus that is intended to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action.").

Plaintiff's reliance on McKenna v. City of Philadelphia, 649 F.3d 171 (3d Cir. 2011) (applying Staub), is equally misplaced. In that case, the court was presented with a "cat's paw" situation—where a police officer was ultimately terminated by a Police Board of Inquiry and there was evidence suggesting his superior who referred the matter to the board was acting with a discriminatory animus. Id. at 176-80.

Plaintiff did not present the case at bar on a "cat's paw" theory. He did not present any evidence that a lower-level supervisor, acting with materially impermissible motives, influenced the decision made by the ultimate decision-maker. As such, the court did not err by choosing not

5

to incorporate Staub, which is inapplicable to this case, into its jury instructions. No injustice can result from the correct application of the law. The court will deny the motion for a new trial with respect to the argument that the court erred in construing the causation standard.

**B. McDonnell Douglas Instruction**

Plaintiff next argues that the court erred by not instructing the jury on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). (Pl.'s Br. (ECF No. 105) at 6-7.) "The appropriate framework for analyzing claims of unlawful retaliation under the FLSA is the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green. . . ." Cononie v. Allegheny Gen. Hops., 29 F. App'x 94, 95 (3d Cir. 2002).

Plaintiff's generalized protest regarding the lack of an instruction regarding the burden-shifting framework is without merit. The court need not instruct the jury on the technical details of the McDonnell Douglas framework, "a charge reviewed as unduly confusing and irrelevant for a jury." Smith v. Borough of Wilkinsburg, 147 F.3d 272, 280 n.4 (3d Cir. 1998). Plaintiff complains that the jury instructions did not contain the phrases "prima facie case" or "legitimate, nondiscriminatory reason." (Pl.'s Br. (ECF No. 105) at 6.) Courts are, for good reason, discouraged from using such technical terms when instructing the jury. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1 (3d Cir. 1999) ("[J]udges should remember that their audience is composed of jurors and not law students. Instructions that explain the subtleties of the McDonnell Douglas framework are generally inappropriate. . . . [T]hough elements of the framework may comprise part of the instruction, *judges should present them in a manner that is free of legalistic jargon*. In most cases, of course, determinations concerning a prima facie case will remain the exclusive domain of the trial judge." (emphasis added)).

Instead of instructing the jury using technical legalese, the Court of Appeals for the Third Circuit has held that trial courts must instruct the jurors that "they are entitled to infer, but need not, that the plaintiff's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision." Smith v. Borough of Wilkinsburg, 147 F.3d at 280 n.4.

Here, the court met its obligations by instructing the jury about the prima facie elements of an FLSA retaliation claim and instructing the jurors that they could "find causation exists if [they found] that the reasons for Mr. Dean's discharge [were] a pretext or excuse for unlawful retaliation."[2] (Jan. 19, 2012 Tr. of Jury Charge ("Tr. Jury Charge") (ECF No. 112) at 16.) The instruction given was not erroneous, and as such the court can find no injustice warranting the grant of a new trial. The court will deny the motion for a new trial with respect to the argument

---

[2] Specifically, the court instructed the jury:

> Concerning the third element, that of causal connection, the connection may be shown in a number - - in many ways. For example, you may or may not find that there is a sufficient connection through timing; that is, Specialized Security's response action followed shortly after it became aware of Mr. Dean's complaint.
> Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by an antagonism shown towards Mr. Dean or change in demeanor toward Mr. Dean. Moreover, you may find causation exists if you find that the reasons for Mr. Dean's discharge are a pretext or excuse for unlawful retaliation.
> Ultimately, you must decide whether Mr. Dean's complaint of failure to pay overtime wages had a determinative effect on Specialized Security Response's decision to discharge him. Determinative effect means that if not for Mr. Dean's complaint, his discharge would not have occurred.

(Tr. Jury Charge (ECF No. 112) at 15-16.)

7

that the court erred by not more fully incorporating the burden-shifting framework into its instruction to the jury.

**C. Licensure Instruction**

Plaintiff's third argument is that the court erred when it failed to instruct the jury that defendant was not licensed under Pennsylvania law as a detective agency in 2008. Plaintiff's argument stems from his ongoing belief that the defendant's lack of a private detective license in 2008 was fatal to the defendant's nondiscriminatory explanation of the decision to terminate plaintiff (i.e., that defendant was required by state law to terminate plaintiff upon learning of his status as a convicted felon). Whether defendant correctly interpreted the law is not the dispositive question. As the court explained in its opinion disposing of defendant's motion for summary judgment, and several times thereafter, the fact that defendant holds a mistaken belief about the appropriate interpretation of the statute does not preclude defendant's proffered nondiscriminatory basis for the termination decision from qualifying as legitimate. In Watson v. SEPTA, 207 F.3d 207, 222 (3d Cir. 2000), the Court of Appeals for the Third Circuit explained that an employer is permitted "to take an adverse employment action for a reason that is not 'true' in the sense that it is not objectively correct." For example:

> [I]f an employer sincerely believes that an employee has stolen company funds and discharges the employee for this reason, the employer should not be held liable under the [employment discrimination statutes in question] just because it turns out that the employee did not steal the funds and that the employer's reason for the discharge was in this sense not "true."

Id. The inquiry must focus upon "the perception of the decision maker." Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991). The defendant need only have an honest belief that the incident occurred. Watson, 207 F.3d at 222. Defendant was entitled to present evidence to the

jury tending to show that plaintiff was terminated because of an honest belief by the decision makers that Pennsylvania law required them to do so.

"A party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995) "It is the responsibility of the trial judge to provide the jury with a clear and accurate statement of the law it is expected to apply in reaching its verdict." McPhee v. Reichel, 461 F.2d 947, 950 (3d Cir. 1972). The trial court has broad discretion in the composition of jury instructions, as long as they are fundamentally accurate and not misleading. Owens, 50 F.3d at 1233 (citing Harrison v. Otis Elevator Corp., 935 F.2d 714, 717 (5th Cir. 1991)). The court is required to exercise special care not to invade upon the fact-finding role of the jurors. United States v. Ayeni, 374 F.3d 1313, 1320-21 (D.C. Cir. 2004).

Because the decision how to compose the jury instructions is one in which the court has broad discretion, the court has especially broad discretion in considering a motion for a new trial which complains that the court erred in its initial determination. See Klein, 992 F.2d at 1289-90.

The court, upon review of the instructions given to jurors in this case, finds no error in its instruction.[3] The court properly took notice of the state law,[4] and accurately and fairly instructed the jury on its meaning and applicability. The factual determination whether defendant was in

---

[3] Among other instructions, the court informed the jurors that "the claim before [them] [was] based on the Fair Labor Standards Act or the FLSA and not the licensure requirements of Pennsylvania law." (Tr. Jury Charge (ECF No. 112) at 13.) The court informed the jurors that "Pennsylvania law prohibits any security guard business from operating as a security guard business without a license to do so . . . [and] also prohibits any licensed security guard business from knowingly employing in connection with its business any person who has been convicted of a felony." (Id. at 16.) The court instructed that "any such business operating without a license or employing a convicted felon is subject to a fine, imprisonment or both." (Id.)

[4] Federal courts are required to take judicial notice of state statutes. Lamar v. Micou, 114 U.S. 218, 223 (1885) ("The law of any State of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.").

possession of a license in 2008 was properly left for jury determination after the presentation of evidence by the parties to the case.[5] To further instruct the jurors that defendant was not licensed would have invaded on the prerogative of the jury to determine the relevant factual issues within the case. Such an instruction may have led to confusion. It may have suggested that the licensure was a prerequisite to defendant's providing the private detective law as its nondiscriminatory reason for terminating plaintiff. As the court explained above, that conclusion is erroneous. It the *subjective* belief of the person who terminated plaintiff (at the time of the termination) about how the law impacted Specailized's ability to employ plaintiff which is paramount, not a *post hoc* assessment by a court about what defendant was *actually* required to do.

Finally, the court notes that, even if the court's decision not to instruct the jury on the licensing issue were erroneous, it would still be inappropriate to grant a new trial on this basis, as the decision in no way prejudiced plaintiff. See Price v. Trans Union, 2012 WL 898687, at *3 ("The Court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold. It must first determine whether an error was made in the course of the trial, and then it must determine whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." (internal quotation marks omitted)). The evidence adduced at trial established beyond dispute that defendant was not licensed in 2008, and no reasonable jury would have concluded otherwise.

---

[5] The question whether a particular individual is licensed under a particular legal authority is often considered a mixed question of law and fact. See, e.g., Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 514 n.11 (4th Cir. 2002) ("[D]etermining whether Strutt enjoyed an implied nonexclusive license to use the NSI Drawings is a mixed question of law (i.e., what is the legal standard for an implied nonexclusive license) and fact (i.e., whether the facts necessary to meet that standard existed). . . ."). Here, the court satisfactorily instructed the jury on the legal components of the Private Detective Act, and left the factual conclusions, such as whether defendant applied for and received a license to the jury.

Because (a) there was no error in the court's jury instructions, and (b) the decision not to instruct the jury that defendant was unlicensed in 2008, if it had been erroneous, would not have been prejudicial, the court will deny the motion for a new trial with respect to that issue. There is no injustice inherent in the court's jury instructions which would warrant a new trial.

**D. Excluding the Testimony of Darrel Parker**

Plaintiff's fourth argument is that the court erred when it excluded the testimony of Darrel Parker ("Parker"). Parker is a detective in the Office of the District Attorney of Allegheny County, Pennsylvania. (Mot. Quash Subpoena (ECF No. 97) ¶ 1.) Parker investigates applications for private detective licenses as part of his job responsibilities. (Id. ¶ 2.) Both parties in this matter subpoenaed Parker to testify during the trial, but the court granted a motion to quash his testimony (ECF No. 97) at a January 17, 2012 hearing outside the presence of the jury. (Jan. 17, 2012 Mots. Hr'g Tr. ("Mots. Hr'g Tr.") (ECF No. 111) at 3.) The court granted the motion to quash because (a) Parker did not participate in any investigation relating to the case and could not present any meaningful factual evidence, (b) defendant represented that it intended to elicit impermissible legal opinion, or untimely expert opinion,[6] and (c) plaintiff's

---

[6] At the hearing, the court inquired about defendant's purpose in subpoenaing Parker:

> THE COURT: Okay. The Court just received the motion to quash today. And in the motion to quash the proposed - - the witness says that he doesn't want to provide expert testimony.
>   So what's the purpose of the subpoena? What do you expect to elicit from this witness?
>
> [COUNSEL FOR DEFENDANT]: Well, Your Honor, I think it would be solely a factual matter. After speaking with Inspector Parker, he would testify that it's acceptable for a principal - - for a company to operate under its principal's security license, private detective license.
>
> THE COURT: Why is that a fact matter?

11

[COUNSEL FOR DEFENDANT]: I mean I guess another way to put it would was - -

THE COURT: Does he know anything about this case?

[COUNSEL FOR PARKER]: No, Your Honor, Detective Parker didn't do the investigation on this case, he wasn't in charge of those matters at the time that this license came through.

When I talked to [counsel for defendant], he was - - explained to me that there were basically two reasons that he was calling Detective Parker. One was to determine whether or not it would be legal for the Defendants to operate under the owner's license, and the other one was whether it was legal to - - for a private detective agency to hire a felon.

. . .

[Plaintiff] is calling Detective Parker to lay foundation to put a document in, as I understand it. . . .

THE COURT: That's part of his job, to have custody of those records?

[COUNSEL FOR PARKER]: Yes, he would be the one who had the records.

THE COURT: Okay.

[COUNSEL FOR DEFENDANT]: Your Honor, I think inspector Parker is able to testify as a matter of fact whether Specialized Security was authorized to operate as a security company at the time of the Plaintiff's employment.

THE COURT: Well, he could testify whether something was filed there or not filed there, but you're asking him to give essentially a legal opinion or an expert opinion on the matter.

[COUNSEL FOR DEFENDANT]: Well, Your Honor, I mean that's - - that's what the issue is. I mean technically, yeah - -

THE COURT: That's what you need. The time has come and gone for the experts. You can't call an expert on the day of the trial and not give the other - - not have an expert report, not have responses, not have an opportunity for discovery on that or the other side to get their own expert.

only purpose in calling Parker was to prove the authenticity of a document, which defendant agreed to stipulate was authentic.[7]

---

(Mots. Hr'g Tr. (ECF No. 111) at 2-4.)

[7] The court inquired about plaintiff's purpose in subpoenaing Parker:

> THE COURT: He's just authenticating that document.
>
> [COUNSEL FOR PLAINTIFF]: Yes, but I think - - he's here to identify it as his work and this is what he found.
>
> [COUNSEL FOR DEFENDANT]: . . .
>    I will stipulate to that . . . .
>
> [COUNSEL FOR PLAINTIFF]: I think his testimony will be five minutes long, simply to identify who he is and this is an authentic document.
>
> [COUNSEL FOR DEFENDANT]: Why bring him in if you have the document?
>
> THE COURT: If there's a stipulation, you don't need him; the document is authenticated and you can do a stipulation that this is an authentic document from them and you present it, read it to the jury that way.
>
> [COUNSEL FOR PLAINTIFF]: Well - - I guess there's different ways of doing it. As - - being the Plaintiff and trying to present my case, I thought that this was the better way to do it. You know, I guess always there could be stipulations done . . . .
>
> . . .
>
> THE COURT: If it's solely for the purpose of authenticating it, I don't think we need to bring him in and you can stipulate to it. And I can tell the . . . jurors that the parties have stipulated to this document and you'll be able to show it as evidence. Okay?
>    So he will be excused. He will not have to show up.

(Mots. Hr'g Tr. (ECF No. 111) at 8-9, 11.)

In his motion for a new trial, plaintiff summarily argues, without citation to legal authority or to the record, that "[t]he Trial Court's refusal to allow Detective Parker to testify significantly prejudiced Plaintiff's attempt to show that Defendant's legitimate, nondiscriminatory reason for termination was mere pretext [because] Detective Parker's testimony would have clarified the contents of [exhibit 3] for the jury." (Pl.'s Br. (ECF No. 105) at 10.) Exhibit three in the trial binder is a March 26, 2010 letter from Kate Barkman, of the "Dept of Court Records" advising Parker that Specialized, Arnoni, and James D. Compolongo (another employee or director of Specialized) had received a private detective license, effective February 17, 2010 through February 17, 2012. (Ex. 3; see Ex. & Witness List (ECF No. 103) at 4.)

The court's decision not to allow Parker to testify was appropriate. His testimony was unnecessary, and would have been redundant, because defendant did not dispute the authenticity of the letter, and because plaintiff did not articulate an alternative basis for requiring Parker to testify beyond the authentication of an undisputedly authentic document. (Mots. Hr'g Tr. (ECF No. 111) at 8 ("I think his testimony will be five minutes long, simply to identify who he is and this is an authentic document.").)

Under Federal Rule of Evidence 403, the court may exclude relevant evidence, such as that which authenticates a document, if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FED. R. EVID. 403. Here, plaintiff's proffer indicated that the probative value of the testimony was merely to authenticate a document, which defendant admitted was authentic. Thus, Parker's testimony had virtually no probative value relating to the case. As such, its nearly nonexistent probative value was substantially outweighed

by the waste of time, undue delay and needless presentation of cumulative evidence associated with his being called as a witness.

Importantly, the court's decision with regard to Parker's ability to testify was not sufficiently prejudicial to warrant the granting of a new trial, even if it were an erroneous decision. The factual contents of the letter were not in dispute, did not require any clarification or explanation by a witness, and were only collaterally related, at best, to any pretext for defendant's decision to terminate plaintiff.

Because the decision to exclude Parker's testimony was neither erroneous nor prejudicial, and because plaintiff's post hoc proffer that Parker's testimony would clarify exhibit three was not presented during the trial, the court will deny the motion for a new trial with respect to that issue. There is no injustice inherent in the court's original decision, which did not result in prejudice to plaintiff's case, and was based on the representations by counsel on the record that Parker's testimony would have been needlessly cumulative, wasted time, and potentially confused the issues.

**E. The Summary Judgment Decision**

Plaintiff's final ground for a new trial is that the court erred in its summary judgment ruling. Plaintiff did not file a motion to reconsider or to alter or amend the summary judgment, and even if the court granted a motion for a new trial, the complained-of summary judgment rulings would stand. Plaintiff cited no decisions in which a court granted a new trial on the grounds of an erroneous summary judgment decision.[8]

---

[8] Even if plaintiff had properly and timely filed a motion for reconsideration of the summary judgment in the appropriate timeframe, which he did not, his motion would be denied. A motion for reconsideration must rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. Wingate Inns Int'l, Inc.v. Hightech Inn.com, LLC, 429 F. App'x 152, 154 (3d Cir.

*Conclusion*

Plaintiff did not argue that the verdict was against the weight of the evidence, and he has not established that a new trial must be granted to avoid injustice on the basis of alleged errors made by the court in its management of the trial. The motion for a new trial (ECF No. 104) must, therefore, be denied.

**ORDER**

AND NOW, for the reasons stated above, because no injustice will result from the failure to grant plaintiff a new trial, it is HEREBY ORDERED that plaintiff's motion for a new trial (ECF No. 104) is DENIED.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: June 27, 2012

---

2011) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)). A motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already rightly or wrongly made. Williams v. Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). Litigants are cautioned to "evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." Waye v. First Citizen's Nat'l Bank, 846 F. Supp. 310, 314 n.3 (M.D. Pa. 1994) (internal quotation omitted). Plaintiff did not present the court with any intervening change in the law, with new evidence, or with any clear error or manifest injustice resulting from the court's earlier decision. He raises the same legal issues in his motion for a new trial, which he raised at the summary judgment stage of this litigation, and which the court already addressed. A motion to reconsider is not a vehicle for unending dialogue between litigants and the court on matters already determined.